## Mynick *v.* Bickings, Appellant.

*Mortgage—Principal and agent—Payment to agent.*

The mere fact that a mortgagee employs an attorney as a conveyancer to prepare the mortgage papers, does not invest the attorney with authority to collect the principal of the mortgage from the mortgagor. This is

especially so where the mortgagor knows that the mortgage papers are not in the hands of the attorney, although the attorney had received payments of interest from time to time and such payments had been accepted by the mortgagee.

Generally speaking, it is the duty of a debtor, who is bound by an obligation in writing to see that the person to whom he pays the money for his creditor has possession of the evidence of indebtedness, unless he can show express authority in the person to whom the payment is made to receive the money.

The position of an investor would be most precarious if the fact that he employs an attorney from time to time when making loans and authorizes him to make collections of interest, and in special cases of the principal due on securities, is sufficient to warrant a finding of authority generally to collect the principal of all his client's mortgages, and that, too, when the latter keeps possession of his obligations.

Argued Dec. 6, 1905. Appeal, No. 201, Oct. T., 1905, by defendant, from judgment of C. P. Montgomery Co., March T., 1904, No. 20, on verdict for plaintiff in case of Josephine Mynick v. Richard W. Bickings. Before RICE, P. J., BEAVER, ORLADY, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Scire facias sur mortgage. Before WEAND, J.

At the trial the court charged as follows:

The mere fact that an attorney is employed to invest money on mortgage does not invest him with the right to receive the principal of that mortgage, unless he has some authority from the mortgagee to do so, either express or implied. Now, when this man, Mr. Bickings, went to Mr. Jones to pay off part of this mortgage, it was his duty to inquire of Mr. Jones whether he had authority to receive it; but nothing of that kind took place. He relied on the fact that he had received the mortgage through Mr. Jones. Mr. Jones did not have the mortgage nor the bond with him. If he had, and had produced them, that would have been evidence that he had the right to receive the money; but nothing of that kind took place. Mr. Bickings paid $500 on account, and afterwards only paid Mr. Jones interest on the balance; but Mr. Jones paid Miss Mynick interest on the whole amount, and, therefore, she was under the belief, all the time, that the whole amount was still due. It just simply amounts to this: That Mr. Jones was false to his

duty.  He received this money, he never paid it over to Miss
Mynick, and there is no evidence that he had any right to re-
ceive it.  Now, this may be unfortunate for this poor man;
but, when a loss occurs, the person who occasioned the loss
must bear it, and, through his ignorance, probably, he neglected
to do his duty, and it is his misfortune that he may have to pay
the money the second time.  It is my duty, however, to instruct
you, under the law, that you are to render a verdict in favor of
the plaintiff for the sum of $634.32, being the amount now due,
after deducting the $415.10 which was paid into court, and
you will so render the verdict in that form.

Verdict and judgment for plaintiff for $634.32.  Defendant
appealed.

*Error assigned* was in giving binding instructions for plain-
tiff.

*Henry Freedley*, with him *E. D. Egbert*, for appellant.—Jones
was authorized to receive the principal of the mortgage : Beal
v. Adams Express Co., 13 Pa. Superior Ct. 143 ; Valentine v.
Parker, 5 Pa. 333 ; Dougherty v. Hunter, 54 Pa. 380 ; Culver
v. Pocono Spring Water Ice Co., 206 Pa. 481 ; Duncan v. Hart-
man, 143 Pa. 595 ; The Odorilla v. Baizley, 128 Pa. 283 ; De-
Witt v. DeWitt, 202 Pa. 255 ; Patterson v. Van Loon, 186 Pa.
367 ; McMahon v. Bardinger, 18 W. N. C. 112 ; Brooke v.
R. R. Co., 108 Pa. 529 ; Chemical Co. v. Purchasing Co., 22
Pa. Superior Ct. 426 ; Himes v. Herr, 3 Pa. Superior Ct. 124 ;
Robb v. Penna. Co., 3 Pa. Superior Ct. 254 ; DeTurck v. Matz,
180 Pa. 347.

*Joseph S. Goodbread* with him *J. Joseph Stratton* and *Joseph
Fornance*, for appellee.—A person dealing with an agent is
bound to ascertain the extent of an agent's authority, and this
is particularly the case in dealing with him for the first time :
Lauer Brewing Co. v. Schmidt, 24 Superior Ct. 396 ; Cowden
v. Bechlar, 4 Montg. 22 ; Slaymaker v. Herr, 12 Lanc. L. R.
342 ; Smith v. Kidd, 68 N. Y. 130 ; Bryant v. Hamlin, 3 Pa.
Dist. Rep. 385.

In the absence of the possession of the mortgage papers by
another than the owner, or of express authority to receive pay-

ment thereof, payment to such person is not good, as against the owner of the mortgage not authorizing such payment; that an attorney has been doing business for the owner for some time, is not evidence of authority : Pepper & Lewis, Dig. of Dec. vol. 12, Col. 20,729; Bryant v. Hamlin, 3 Pa. Dist. Rep. 385; Pratt v. Eby, 67 Pa. 396.

An agent authorized to receive the interest on the mortgage has no right to give a discharge for the principal : Phila. Trust & Safe Deposit Co. v. Roberts, 17 Phila. 9; Eby v. Lamb, 10 Pa. C. C. Rep. 209; Taylor v. Mingert, 33 Legal Int. 238; Bryant v. Hamlin, 3 Pa. Dist. Rep. 387; Smith v. Kidd, 68 N. Y. 130.

The circumstance of the agent having before received the interest and a part of the principal did not imply that he had any authority to receive it, but as long as he paid it over all was well, and any other person might have carried it to the creditor as well as he : Wolstenholm v. Davies, Freem. Ch. 289.

OPINION BY HENDERSON, J., March 12, 1906 :

The appellant applied to Silas Jones, an attorney, for a loan of $1,000 which Jones promised to procure for him and for whose services with reference thereto the appellant agreed to pay him $20.00. The money was obtained from the plaintiff and the appellant executed a bond and mortgage to her for the amount borrowed. Interest was paid to Jones from time to time and by him paid to the plaintiff and on October 31, 1898, $500 was paid to Jones on the principal. On October 16, 1902, the appellant paid $100 to a clerk in Jones' office to be applied on the principal. This latter amount was given to the plaintiff but the payment of $500 was not paid to her; nor had she knowledge that it had been received by Jones until after his death. It is now contended by the appellant that the plaintiff should be charged with the payment of $500 on the ground that Jones was agent for her and authorized to receive payments of principal and interest on the mortgage. It is not claimed that the bond and mortgage were placed in his hands for collection, nor that he had express authority to receive payments thereon. The plaintiff received and retained the bond and mortgage after the loan was made and they were not in

the possession of Jones at the times when the payments were made to him. The right to the credit is not claimed by way of estoppel because Jones was held out to the appellant by the plaintiff as her agent, but because of an undefined employment in connection with loans made by her to other persons. This employment was sought to be shown by an offer to prove that Jones was the agent of the plaintiff in loaning money on mortgage and judgment and the collection of the principal as well as the interest on those loans "and that this course of dealing continued through their whole connection with him." It was not proposed to show that the plaintiff was engaged in loaning money as a business or that Jones was her agent, generally. The argument is that if the plaintiff allowed or employed Jones to collect money on loans made by her and pay the same to her such action invested him with authority to receive and receipt for principal or interest on any bond or mortgage which she held, without express authority from her so to do; and in this view of the case, it would not seem to make any difference whether the number of loans was large or small. The act of Jones with reference to two or three loans would commit the plaintiff to responsibility for his conduct with reference to the one now under consideration or others which may have been made by the plaintiff. The mere fact that the attorney acted as a conveyancer in the transaction between the plaintiff and defendant did not invest him with authority to collect the debt. The obligations were given to the plaintiff. This the appellant well knew. They were not in the possession of Jones at any time when payments were made. The defendant had not been requested to make payments to Jones, nor had the plaintiff held out the latter as having authority to receive payments on the debt. Relying on his integrity and apparently to avoid the inconvenience of finding the plaintiff and paying her, he gave the money to Jones to be paid over. In so doing he assumed the risk that Jones might not act in good faith. If, at the time the payments were made, the bond and mortgage had been in Jones' possession such possession would have been evidence of his control of the obligations. The debtor might have made himself secure by insisting on the production of the obligations and having the payments indorsed thereon. Generally speaking, it is the duty of a debtor, who is bound by an obligation

in writing, to see that the person to whom he pays the money for his creditor has possession of the evidence of indebtedness, unless he can show express authority in the person to whom the payment is made to receive the money. Loans made by the plaintiff were independent transactions completed when the security was delivered and the money paid. The completion of one transaction would not invest the attorney with power to act in another outside of the express authority given him or that implied in his engagement as an attorney in professional business. Nor did the fact that payments of interest were received from time to time and accepted by the creditor imply that he had authority so to receive them. When the money was paid to the creditor the debtor received credit for the payment, but any other person might have handed the money to the creditor with the same effect as when done by the attorney through whom the loan was effected: Williams v. Walker, 2 Sandf. Ch. 325; Smith v. Kidd, 68 N. Y. 130; Story on Agency, secs. 98, 104; Haines v. Pohlmann, 25 N. J. Eq. 179. The position of an investor would be most precarious if the fact that he employs an attorney from time to time when making loans and authorizes him to make collections of interest, and in special cases of the principal due on securities, is sufficient to warrant a finding of authority generally to collect the principal of all his client's mortgages and that, too, when the latter keeps possession of his obligations. Numerous cases, of which Dougherty v. Hunter, 54 Pa. 380; Brooke v. R. R. Co., 108 Pa. 529; Culver v. Pocono Spring Water Ice Co., 206 Pa. 481; Chemical Co. v. Purchasing Co., 22 Pa. Superior Ct. 426, are examples, are cited by the appellant's counsel relating to the authority of an agent when engaged in the discharge of his duty in the prosecution of a business, but we think they are not applicable to the facts of this case. Our attention has been called to our own case, Himes v. Herr, 3 Pa. Superior Ct. 124, as an authority in support of the appellant's position. In that case, however, the attorney was acting in a strictly professional capacity. A judgment had been entered in the court of common pleas. He procured a revival of the judgment, was attorney in the case and clearly capable of receiving the amount of the debt. Moreover, the plaintiff in the judgment ratified his act and accepted from him a deed in satisfaction of the sum receipted for by him.

In view of the relation of the attorney to the case and the subsequent conduct of the plaintiff in the judgment we do not see how any other conclusion could have been reached : McMahon *v.* Bardinger, 18 W. N. C. 112, is of like character.   An action was pending on a mortgage.   Muh took an assignment of the mortgage, Webster acting as his attorney.   After the assignment the sci. fa. was discontinued.   Afterwards, the attorney pressed the defendant for payment and succeeded in collecting a part of the mortgage.   Soon thereafter he issued a sci. fa. on the mortgage and on the same day gave a receipt for the money which he had theretofore collected.   A few weeks later the plaintiff discovered that the payment had been made to his attorney.   The court permitted this evidence to be introduced for the purpose of showing that Webster was acting as attorney in the case for Muh at the time the payments were made to him. The facts tended to show the employment of the attorney for the collection of the debt and that being the case the payment to him by the debtor would be a good discharge from liability. In the case we are now considering the agent did not act in the capacity of an attorney in a proceeding in court; nor was there any intimation of a ratification or compromise.   He who transacts business with an agent is bound to inquire as to the nature and extent of his authority.   In the present case the defendant made no inquiry but assumed that because Jones effected the loan he was authorized to receive the debt and interest.   The plaintiff did not mislead him and he, rather than the plaintiff, should bear the misfortune of his inattention.

The judgment is affirmed.