# Stirling's Petition.

*Appeals—Findings of fact—Evidence—Signature to mortgage.*
1. Where it is found by the court below that the signature to a mortgage is genuine, that finding will not be reversed on appeal where there is evidence to support it.

*Principal and agent — Authority of agent — Holding out — Course of dealing—Third persons—Receiving mortgage money.*
2. The rule as between the principal and third persons is that the mutual rights and liabilities are governed by the apparent scope of the agent's authority, which is that authority which the principal holds the agent out as possessing, or which he permits

the agent to represent that he possesses, and which the principal is estopped to deny, and the principal will be bound by all acts of the agent performed in the usual and customary mode of doing the particular business, though acting with limited powers.

3. The agent's authority may be established by showing a course of dealing.

4. The authority of an agent may be implied from the fact that he has previously received and receipted for payments of money, and that his acts had been approved by the principal.

*Innocent persons—Which of two must suffer.*

5. Where one of two innocent persons must suffer, it should be the one who places it within the power of the third person to commit the wrong.

Argued October 5, 1927. Before Moschzisker, C. J., Walling, Simpson, Kephart, Sadler and Schaffer, JJ.

Appeal, No. 142, March T., 1927, by Albert Stirling et ux., from order of C. P. Allegheny Co., July T., 1927, No. 500, distributing money paid into court, in case of petition of Albert Stirling et ux. Affirmed.

Petition for satisfaction of mortgage.

Rule to distribute money paid into court to the secretary of banking. Before McVicar, J.

The opinion of the Supreme Court states the facts.

Rule absolute. Albert Stirling et ux. appealed.

*Error assigned* was order, quoting record.

*Robert H. Leitch,* for appellant.—No agency whatsoever existed between Stirling and the Central Home Co. with respect to this $4,800 mortgage.

Stirling did not owe the bank a dollar and was not borrowing anything from the bank, and, therefore, as the Central Home Co. actually did prepare a bond and mortgage with the bank as mortgagee and creditor therein, there must have been some agency or understanding between the company and the bank which should con-

vince the court that the company was acting in some capacity for the bank.

The bare conclusion of the witness as to agency or no agency, has no value against the records and acts of the parties to the contrary: Elkins v. Morgan, 190 Pa. 430.

An agent's authority may be established by direct evidence or by evidence showing a course of dealing with others within the knowledge of the principal and acquiesced in by him: Powell v. B. & L. Assn., 252 Pa. 587; Faiola v. Calderone, 275 Pa. 303.

The case at bar should have been sent to a jury: Fruit Dispatch v. Magee, 60 Pa. Superior Ct. 259.

The bank, by a long course of dealing, had engaged the Central Home Co. to act as its agent in the investment of its funds in mortgages upon new houses. Paying out said $15,000 to said company was but in line with its usual practice; the company was not an independent contractor so far as the bank was concerned, for there was no contractual relationship between them, but the company acted solely as an *agent* in the investment of said funds: Lipman v. Noblit, 194 Pa. 416; Bunting v. Goldstein, 283 Pa. 356; Eckert v. Shipbuilding Corp., 280 Pa. 340; Bell v. Trust Co., 282 Pa. 562; Merriam v. Haas, 154 U. S. 542; Odorilla v. Baizley, 128 Pa. 283.

*Stephen Stone,* of *Stone, Chalfant & McCandless,* for appellee, cited: Eagler v. Cherewfka, 86 Pa. Superior Ct. 122; Pepper v. Cairns, 133 Pa. 114.

OPINION BY MR. JUSTICE KEPHART, November 28, 1927:

Appellants,—Stirlings—, owners of a plot of ground in Pittsburgh, engaged the Central Home Company to finance and construct a duplex dwelling. A temporary loan of $15,000 was secured from the Pittsburgh Deposit & Title Company on bond and mortgage of appellants. The total cost less a credit of $910.37 was $19,-

950. For permanent financing and to liquidate this debt, reduced by $2,150 which had been paid by appellants, a new loan of $13,000 was procured, hereafter called first mortgage, and it was agreed the balance due, $4,800, was to be raised by a second mortgage. These two amounts were sufficient to pay the principal and accrued interest of the $15,000 mortgage, that being the balance of the construction debt.

When the second mortgage of $4,800, due six months after date, was executed to the Title Company as mortgagee, the Home Company agreed with appellants that $150 should be paid each month in reduction of the principal and interest of the second mortgage, and interest on the first mortgage. Appellants, in this manner, paid the full amount of the second mortgage to the Central Home Company, with interest, but the latter, as far as the record discloses, did not account to the Title Company for the principal, and paid only a part of the interest,—to December, 1925. While the Home Company's records show the money received was sufficient to pay this mortgage and interest, it was not sufficient to pay the interest on the first mortgage, which, in the sum of $2,314.40, the Home Company advanced for appellants. The Home Company misappropriated the $4,800 received to pay the second mortgage, with interest from December as above stated.

The Title Company was forced into liquidation, and, when the secretary of banking took possession of its property, he found this mortgage unpaid. Appellants then paid the amount of the mortgage into court, and the secretary of banking petitioned for its distribution to the insolvent company. Appellants, in answer thereto, denied any knowledge of the second mortgage executed to the Pittsburgh Deposit & Title Company, or that they had received any money from that company, and averred they had paid the full sum due on their building contract to the Central Home Company.

Appellants, in executing the second mortgage without reading it, relied on the assurance of the representative of the Home Company that it was in favor of that company, and its terms required the payment of $150 a month. The court below, however, found that the mortgage was executed by them to the Pittsburgh Deposit & Title Company, and held that they were bound by the instrument: Ralston v. Phila. R. T. Co., 267 Pa. 257, 270; Eagler v. Cherewfka, 86 Pa. Superior Ct. 122. When it is found as a fact by the court below that the signature to a mortgage is genuine, that finding will not be reversed on appeal where there is evidence to support it: Weir v. Washington Trust Co., 263 Pa. 72. The case now resolves itself into a question as to which one of two innocent parties must suffer for the misconduct of a third person. The losing party must be the one whose acts made possible the misconduct: Froio v. Armstrong (No. 1), 277 Pa. 18.

Appellants' answer to the secretary's petition does not set up fraud between the Title Company and the Home Company, nor does the evidence show anything from which misconduct might be inferred. The Stirlings admit that the Home Company acted as their agent to procure the money necessary to construct the building. This was accomplished by securing their mortgage for $15,000, payable to the Title Company. They knew that the Home Company received this sum of money on duly authenticated building vouchers. When the building was completed and the total cost was ascertained, the Home Company acted as their agent in procuring an additional loan of $13,000 from a church society. At the same time they executed the bond and mortgage which is the basis of this action.

It does not appear that the Title Company had any knowledge whatsoever that the Stirlings denied or did not know that they were named as mortgagees. When the mortgage was delivered and the proceeds turned over, the Title Company was clearly justified in presum-

ing that the Home Company, who had theretofore acted as the agent of the Stirlings in its financial and building matters connected with this property, was continuing to act for them. The rule, "as between the principal and third persons, [is that] the mutual rights and liabilities are governed by the apparent scope of the agent's authority, which is that authority which the principal holds the agent out as possessing or which he permits the agent to represent that he possesses and which the principal is estopped to deny, and the principal will be bound by all acts of the agent performed in the usual and customary mode of doing the particular business,' though acting with limited powers: 2 C. J. 570": Williams v. Cook, 289 Pa. 207, 212, 213. An agent's authority may be established by showing a course of dealing: Faiola v. Calderone, 275 Pa. 303; Colonial Trust Co. v. Davis, 274 Pa. 363; Powell v. Old Hickory B. & L. Assn., 252 Pa. 587. The Title Company was therefore clearly warranted in turning over the proceeds of the mortgage to the Home Company: Pepper v. Cairns, 133 Pa. 114; Weir v. Washington Trust Co., supra. The authority of an agent may be implied from the fact that he has previously received and receipted for payments of money and that his acts had been approved by the principal: 2 C. J. 621; Williams v. Cook, supra, p. 213.

The Stirlings paid the full sum, but there is no evidence to show that the Home Company, in receiving it, represented the Title Company; nor does the record show it represented the Title Company for any purpose at any time. The agreement as to monthly payments was not shown to be by its authority. While it is true the Title Company did finance other building operations for the Home Company, this circumstance would not be enough to establish an agency; nor would the fact that while appellants continued to pay to the Home Company, the Title Company did not call for payments on the principal, overdue for three years. The interest was

paid for a part of the time, but while it does appear that this interest was paid by the Home Company to the Title Company, this fact would not establish an agency, especially when the Home Company had admittedly been acting as agent for the mortgagors.

The court below was justified in finding from the record that the Title Company was innocent as to any wrongdoing on the part of the Home Company, and that the latter company did not represent it. Where one of two innocent persons must suffer, it must be the one who places it within the power of the third person to commit a wrong. This the Sterlings did when they trusted the Home Company to act as their agent, and relied on it to execute the second mortgage, and continued to pay to the one defrauding them.

Under all the evidence, the decree awarding the money to the secretary of banking must be affirmed at the cost of appellants.